AO 91 (Rev. 11/11) Criminal Complaint　　　　　　　　　　　　　　　　　　　　　AUSA Branka Cimesa (312) 353-6630

**FILED**
2/14/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CASE NUMBER: 25CR94 |
| MARCUS GOMEZ-CALDERON | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about February 13, 2025, at North Riverside, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | did knowingly and intentionally distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

s/ Stephen O'Rourke　JWA with permission

STEPHEN O'ROURKE
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: February 14, 2025

*Judge's signature*

City and state: Chicago, Illinois

Hon. Jeannice W. Appenteng, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, STEPHEN O'ROURKE, being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since approximately June 2022. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that MARCUS GOMEZ-CALDERON has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GOMEZ-CALDERON with distribution of a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, my training and experience, my review of law enforcement reports, and information provided to me by other law enforcement agents.

4. The summaries of recorded conversations in this affidavit do not include reference to all of the topics covered during the conversations. Further, quoted material from the recorded conversations as set out in this affidavit is taken from

draft summaries and descriptions by law enforcement participants, not final transcripts. Some of the conversations took place in Spanish; the quoted material below is based on a preliminary translation of those conversations, not a final translation. In addition, the summaries do not include references to all statements made by the speakers on the topics that are described by the speakers. In certain of the paragraphs describing calls set forth below, interpretations of the discussion are included in brackets. These interpretations include meanings attributed to code words, coded language, or vague references used by the speakers. My understanding and interpretation of the conversations is based upon the contents of the conversations, information provided by the confidential source, the context of both prior and subsequent intercepted conversations, my knowledge derived from this investigation, and my experience and familiarity, and the experience and familiarity of other law enforcement agents, with narcotics trafficking.

## I. SUMMARY

5. As set forth in more detail below, on February 13, 2025, GOMEZ-CALDERON met with an undercover agent (the "UC") in the UC's car in a parking lot in North Riverside, Illinois, and delivered a bag containing approximately 6 kilograms of cocaine. Officers arrested GOMEZ-CALDERON, who waived his *Miranda* rights, and made a recorded statement admitting that he had delivered the 6 kilograms of "drugs."

## II. FACTS SUPPORTING PROBABLE CAUSE

### a. GOMEZ-CALDERON Approaches Undercover Agent with Package Containing Cocaine

6. On February 13, 2025, the UC, equipped with a recording device, was waiting in a white Honda Elantra in the parking lot of JC Penny located at 7507 Cermak Road, North Riverside, on information that someone would arrive at that location to deliver to him 6 kilograms of cocaine in exchange for $84,000.

7. At approximately 2:16 p.m., agents established surveillance in the area of 7507 Cermak Road, North Riverside.

8. At approximately 3:40 p.m., agents observed an individual subsequently identified as GOMEZ-CALDERON[1] exit a black Toyota Camry with a black bag and suitcase in front of the JC Penny store. Agents observed GOMEZ-CALDERON enter the JC Penny store and observed the Toyota Camry drive away. Agents conducted a motor vehicle stop on the black Toyota Camry and confirmed the vehicle was an Uber rideshare.



---

[1] As set forth in more detail below, agents identified GOMEZ-CALDERON when they arrested him minutes later.

3

c. **GOMEZ-CALDERON Distributes 6 Kilograms of Cocaine to the UC.**

9. At approximately 3:47 p.m., agents observed GOMEZ-CALDERON exit the store with the black bag and suitcase and walk directly to the UC's vehicle. Agents observed GOMEZ-CALDERON at the rear of the UC's vehicle near the trunk compartment.

10. At approximately 3:48 p.m., agents observed GOMEZ-CALDERON open the rear passenger door and place the suitcase into the vehicle and then open the front passenger door and enter the vehicle.

11. According to the audio recording captured on the UC's recording device, after GOMEZ-CALDERON entered the UC's vehicle, the UC asked, "it's just the six [kilograms of] whites [cocaine], right?" GOMEZ-CALDERON confirmed, "yes." The UC asked, "you didn't bring no fentanyl?" GOMEZ-CALDERON indicated he had not and that "they" had packed it for him.

12. According to the audio recording, GOMEZ-CALDERON indicated he would check. According to the UC, GOMEZ-CALDERON exited the vehicle and opened the back passenger door to retrieve the suitcase. The UC sat in the front driver seat as GOMEZ-CALDERON opened the suitcase to confirm the contents. The UC observed as GOMEZ-CALDERON removed and counted each kilogram one by one, demonstrating that the suitcase contained six brick-like objects. He asked GOMEZ-CALDERON, "they didn't tell you nothing about it? how pure it is and shit like that?" GOMEZ-CALDERON responded, "it's good shit . . ."

4

c. **GOMEZ-CALDERON Is Arrested**

13. Once the UC confirmed there were six brick-shaped packages in the suitcase, the UC told GOMEZ-CALDERON he was going to retrieve the money from the trunk. At that point, at approximately 3:50 p.m., agents observed the UC give the predetermined arrest signal. Agents then converged on the UC vehicle and arrested GOMEZ-CALDERON. Agents searched the UC's vehicle and recovered 6 brick-like objects, wrapped in duct tapped that appeared to be kilograms of cocaine from the suitcase. On the suitcase, agents observed a checked bag sticker with the words "CALDERON/MAR." An image of the brick-like objects is below:



14. Investigators seized the kilograms and took them to the Chicago field office for testing. The field test rendered a positive result for the presence of cocaine

and determined that the gross weight of the substance was approximately 7,300 grams.



15. At approximately 3:53 p.m., agents read GOMEZ-CALDERON his Miranda Rights in an unrecorded interaction. GOMEZ-CALDERON stated he understood his rights and would be willing to answer questions.

16. At approximately 4:02 p.m., GOMEZ-CALDERON was transported to the Berwyn Police Department for the booking process.

    **d.    GOMEZ-CALDERON's Post-Arrest Admissions**

17. At approximately 5:03 p.m., law enforcement conducted a recorded interview of GOMEZ-CALDERON. At the outset of that interview, agents again read GOMEZ-CALDERON his *Miranda* rights, which he waived verbally.

18. During the recorded interview, GOMEZ-CALDERON admitted that he was in Chicago to deliver a package to the UC and that he had delivered the 6 kilograms of "drugs" to the UC.

6

19. GOMEZ-CALDERON told agents he was contacted on February 12, 2025 by INDIVIDUAL A in Los Angeles, California. INDIVIDUAL A directed GOMEZ-CALDERON to meet him at a hotel in Bellflower, California. GOMEZ-CALDERON went to the hotel and INDIVIDUAL A gave him money via CashApp to buy a plane ticket to Chicago. He was instructed to take a pre-packed suitcase with him, to fly to Chicago, and to meet with someone in Chicago to deliver the suitcase.

20. GOMEZ-CALDERON provided written consent to investigators to search his phone, which they did. In searching the phone, investigators uncovered text message conversations between GOMEZ-CALDERON and INDIVIDUAL A coordinating logistics for the trip. In the messages, investigators uncovered a screenshot of the flight confirmation that GOMEZ-CALDERON sent to INDIVIDUAL A for a flight on February 13, 2025 from Santa Ana, California, to Chicago.

21. Investigators additionally uncovered a confirmation of the CashApp payment GOMEZ-CALDERON described during his interview, as well as a screenshot of the address where the delivery should happen—7507 Cermak Road, North Riverside at the JC Penny. Once GOMEZ-CALDERON arrived in Chicago, INDIVIDUAL A sent him additional text messages asking for status updates and providing him instructions on where the UC will be: "he's in a white Honda in the front."

## II. CONCLUSION

22. Based on the foregoing, there is probable cause to believe that on or about February 13, 2025, MARCUS GOMEZ-CALDERON knowingly and intentionally distributed a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

STEPHEN O'ROURKE
Digitally signed by STEPHEN O'ROURKE
Date: 2025.02.14 10:14:49 -06'00'

STEPHEN O'ROURKE
Special Agent, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone on February 14, 2025

Honorable Jeannice W. Appenteng
United States Magistrate Judge